Slip Op. 20-135

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SAO TA FOODS JOINT STOCK COMPANY ET AL., <br><br>    Plaintiffs and Consolidated Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>    Defendant, <br><br>and <br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, <br><br>    Defendant-Intervenor and Consolidated Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Consol. Court No. 18-00205 <br> PUBLIC VERSION |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand results in the twelfth administrative review of the antidumping duty order covering certain frozen warmwater shrimp from the Socialist Republic of Vietnam.]

Dated: September 15, 2020

Matthew R. Nicely and Daniel M. Witkowski, Akin, Gump, Strauss, Hauer & Feld LLP, of Washington, DC, for plaintiffs Sao Ta Foods Joint Stock Company, a.k.a. Fimex VN, et al.

Ethan P. Davis, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Kara M. Westercamp, Trial Attorney. Of counsel was Kirrin Hough,

Attorney, International Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C..

Nathaniel Maandig Rickard and Zachary J. Walker, Picard, Kentz & Rowe, LLP, of Washington, DC, for defendant-intervenor Ad Hoc Shrimp Trade Action Committee

     Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination filed pursuant to the court's order in Sao Ta Foods Joint Stock Co. v. United States, 44 CIT __, 425 F. Supp. 3d 1314 (2020) ("Sao Ta I"). See also Redetermination Pursuant to Ct. Remand Order in [Sao Ta I], Apr. 30, 2020, ECF No. 74 ("Remand Results"). In Sao Ta I, the court sustained in part and remanded in part Commerce's final determination in the twelfth administrative review[1] of the antidumping duty ("ADD") order covering certain frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam"). See Certain Frozen Warmwater Shrimp From [Vietnam], 83 Fed. Reg. 46,704 (Dep't Commerce Sept. 14, 2018) (final results of [ADD] admin. review, 2016–2017), and accompanying Issues & Decision Memo. for the Final Results, Sept. 7, 2018, A-552-802, (Sept. 7, 2018), ECF No. 45 ("Final Decision Memo.").

     Relevant here, in Sao Ta I, the court remanded Commerce's denial of separate rate status to the factory names "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" for further explanation or consideration. See Sao Ta I, 44 CIT at

---

[1] The twelfth administrative review covers the period February 1, 2016 through January 31, 2017. See Initiation of Antidumping and Countervailing Duty Admin. Reviews, 82 Fed. Reg. 17,188, 17,194–96 (Dep't Commerce Apr. 10, 2017).

Case 1:18-cv-00205-CRK   Document 99   Filed 09/23/20   Page 3 of 18

Consol. Court No. 18-00205                                                                    Page 3
PUBLIC VERSION

__, 425 F. Supp. 3d at 1328–32.  On remand, Commerce continues to deny separate rate status, providing additional explanation.  See Remand Results at 1, 5–38.  Plaintiffs Sao Ta Foods Joint Stock Company, a.k.a. Fimex VN ("Fimex"), et al. (collectively, "Vietnamese Respondents") challenge Commerce's Remand Results as unsupported by substantial evidence and as arbitrary and capricious.  See Pls.' Confidential Cmts. on [Remand Results] at 4–32, June 5, 2020, ECF No. 78 ("Pls.' Br.").  Defendant and Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC") request the court to sustain the Remand Results.  See Def.'s Resp. Cmts. Regarding [Remand Results] at 15–25, July 8, 2020, ECF No. 85 ("Def.'s Br."); Def.-Intervenor [AHSTAC's] Resp. to [Pls.' Br.] at 4–19, July 8, 2020, ECF No. 84 ("Def.-Intervenor's Br.").  For the reasons that follow, the court remands Commerce's Remand Results.

## BACKGROUND

The court assumes familiarity with the facts of this case, as set out in its previous opinion ordering remand, see Sao Ta I, 44 CIT at __, 425 F. Supp. 3d at 1319–20, and recounts those facts relevant to the court's review of the Remand Results.  In this twelfth administrative review of the ADD order covering certain frozen warmwater shrimp from Vietnam, Commerce denied separate rate ("SR") status to two factory names of Thuan Phuoc Seafoods and Trading Corporation ("Thuan Phuoc"), "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory," because neither name was listed on their respective valid business

registration certificates ("BRCs").[2] See Decision Memo. for Prelim. Results of [ADD] Admin. Review at 9–10, A-552-802, PD 224, bar code 3679553-02 (Mar. 5, 2018); Names Not Granted [SR] Status at the Prelim. Results at 4, PD 225, bar code 3679580-01 (Mar. 5, 2018) ("Trade Names Memo.");[3] Final Decision Memo. at 16–23.

In Sao Ta I, the court held Commerce's determination that Thuan Phuoc's factories did not qualify for SR status was unsupported by substantial evidence, because Commerce failed to consider the documentary evidence included with Thuan Phuoc's SRC, i.e., copies of the factories' BRCs and invoices, and explain why, in view of that evidence, the factory names did not qualify as trade names of Thuan Phuoc. See id., 44 CIT at __, 425 F. Supp. 3d at 1329–31. On remand, Commerce continues to find that neither factory qualifies for an SR because the factory names are not trade names of Thuan Phuoc and finds that the factories are independent exporters. See Remand Results at 6–12, 17–21.

---

[2] The factory names were identified on sales documents. See Trade Names Memo. at 4.

[3] On November 13, 2018, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination on the docket at ECF Nos. 19-2–3. Subsequently, on May 13, 2020, Defendant filed indices to the administrative record underlying Commerce's remand redetermination on the docket at ECF No. 75. Citations to the administrative record in this opinion are to the numbers Commerce assigned to such documents in the indices.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012)[4] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

Vietnamese Respondents challenge Commerce's denial of SR status to Thuan Phuoc's factory names "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" as unsupported by substantial evidence and arbitrary and capricious, because Commerce failed to address record evidence demonstrating that the factories and Thuan Phuoc are the same company as instructed by the court's opinion ordering remand. See Pls.' Br. at 4–12; 24–25. In addition, Vietnamese

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Consol. Court No. 18-00205                                                                Page 6
**PUBLIC VERSION**

Respondents contend that Commerce abandoned its prior practice that allowed factories which are part of the same company to establish their eligibility for a separate rate as trade names of that company. Id. at 13–24, 26. Defendant and Defendant-Intervenor counter that Commerce reasonably evaluated the record evidence and acted in accordance with its prior practice. See Def.'s Br. at 15–22; Def.-Intervenor's Br. at 11–17.[5] For the reasons that follow, Commerce's denial of SR status to Thuan Phuoc's factory names on this record is unreasonable and its change in practice regarding trade names is arbitrary and capricious.

---

[5] Defendant-Intervenor and Defendant also urge the court to ignore Vietnamese Respondents' request that the court also consider arguments presented in their case brief before the agency. See Def.'s Br. at 15–16; Def.-Intervenor's Br. at 5–8. Generally, "arguments not raised in the opening brief are waived." SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) (citing Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1320–21 n.3 (Fed. Cir. 2005)). Likewise, arguments raised in a "perfunctory manner" are also deemed waived. Home Prods. Int'l, Inc. v. United States, 837 F. Supp. 2d 1294, 1301, 36 CIT 665, 673 (2012) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotations omitted). Therefore, the court declines to consider those arguments that Vietnamese Respondents attempt to incorporate by reference from their case brief yet fail to develop in their opening brief to the court. See, e.g., id., 837 F. Supp. 2d at 1301, 36 CIT at 673–74 (denying a motion to reconsider its decision to deem plaintiff's "threadbare" argument waived and noting that plaintiff could have requested additional pages to develop its argument).

The court, likewise, declines to review the attachments to Vietnamese Respondent's brief as well as its reference to websites, because that information does not appear in the administrative record. See Pls.' Br. at 10 n.39, 15 n.56, 16 n.57, Attach. A–B. Judicial review is generally limited to the full administrative record before the agency at the time it rendered its decision, see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); otherwise, reviewing extra-record evidence could convert the court's standard of review into de novo review. See Axiom Res. Mgmt, Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009).

When Commerce investigates subject merchandise from a non-market economy ("NME") country, such as Vietnam, Commerce presumes that the government controls export-related decision-making of all companies operating within that NME. Import Admin., [Commerce], Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations involving [NME] Countries, Pol'y Bulletin 05.1 at 1 (Apr. 5, 2005) ("Policy Bulletin 05.1"), available at http://enforcement.trade.gov/policy/bull05-1.pdf (last visited Sept. 10, 2020); see also Antidumping Methodologies in Proceedings Involving [NME] Countries: Surrogate Country Selection and [SRs], 72 Fed. Reg. 13,246, 13,247 (Dep't Commerce Mar. 21, 2007) (request for comment) (stating the Department's policy of presuming control for companies operating within NME countries); Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997) (approving Commerce's use of the presumption). Commerce assigns an NME-wide rate, unless a company successfully demonstrates an absence of government control, both in law (de jure) and in fact (de facto)). Policy Bulletin 05.1 at 1–2.[6]

---

[6] Commerce examines the following factors to evaluate de facto control: "whether the export prices are set by, or subject to the approval of, a governmental authority;" "whether the respondent has authority to negotiate and sign contracts and other agreements;" "whether the respondent has autonomy from the central, provincial and local governments in making decisions regarding the selection of its management;" and, "whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses." Policy

(footnote continued)

Consol. Court No. 18-00205  Page 8
**PUBLIC VERSION**

To establish independence from governmental control, a company submits a separate rate application ("SRA") or a separate rate certification ("SRC") (collectively, "separate rate forms").[7] Policy Bulletin 05.1 at 3–4; see also Pls.' Confidential Memo. Supp. R. 56.2 Mot. J. Agency R. at Annex 2 ("SRA"), Annex 3 ("SRC"), Mar. 15, 2019, ECF No. 29. Under Commerce's separate rate policy, recounted in Policy Bulletin 05.1 ("policy"), each company that exports subject merchandise to the United States must submit its own individual SRA, "regardless of any common ownership or affiliation between firms[.]" Policy Bulletin 05.1 at 5. Commerce limits its consideration to only companies that exported subject merchandise to the United States during the period of investigation or review.[8] Id. at 4–5. In addition, applicants must identify affiliates in the NME that exported to the United States during the period of investigation or review and provide documentation

---

Bulletin 05.1 at 2. With respect to de jure control, Commerce considers three factors: "an absence of restrictive stipulations associated with an individual exporter's business and export licenses;" "any legislative enactments decentralizing control of companies;" and, "any other formal measures by the government decentralizing control of companies." Id.

[7] Firms that currently hold an SR submit an SRC, while firms that do not hold an SR or have had changes to corporate structure, ownership, or official company name submit an SRA. See SRA at 2. Both forms request similar information. Relevant here, in an SRC, like an SRA, an applicant provides information and supporting documentation that it is not subject to NME control. See, e.g., Final Decision Memo. at 19.

[8] Although Policy Bulletin 05.1 refers to investigations, the SRA and SRC, which apply to investigations and reviews, incorporate Policy Bulletin 05.1 by reference. See, e.g., SRA at 2.

demonstrating that the same name in its SR request appears both on the business registration certification ("BRC") and on shipments declared to U.S. Customs and Border Protection ("CBP"). Id. at 4–5. The separate rate forms reflect these requirements. Question two of the SRA, like question seven of the SRC, asks whether the applicant "is identified by any other names . . . (i.e., does the company use trade names)" and requests applicants to provide BRCs and "evidence that these names were used during the [period of investigation or review]." See SRA at 10; see also SRC at 7. The SRA and SRC instructions define a "trade name" as a "name[] under which the company does business." SRA at 10 n.3; SRC at 7 n.3.

Thuan Phuoc established its eligibility for a separate rate, see Remand Results at 6, and, in its SRC, also requested that its factories' names, "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory," be granted SR status. See [SRC] of [Thuan Phuoc], PD 71, bar code 3572148-01 (May 15, 2017) ("Thuan Phuoc SRC"). Specifically, in its SRC, Thuan Phuoc had indicated the factories were under common ownership, identified them as trade names of Thuan Phuoc, and provided BRCs and export documentation.[9] See id. at 1–8. As the court noted in its prior

---

[9] Although, in the narrative portion of the SRC, Thuan Phuoc did not call the factories' names "trade names" or d/b/a names—instead referring to them as "separate factories" or "branch factories"—it checked off the form's boxes indicating that it sought SR status for these factory names through the conduit of "trade names." See generally Thuan Phuoc SRC. Thuan Phuoc also entitled one table column with "trade names," and listed the factory names within that category, in its response to question eight of the SRC. See id. at 6–7.

opinion ordering remand, if the two factory names are names under which Thuan Phuoc does business, "then Commerce's finding that Thuan Phuoc operates independently of the government in its export activities would extend to these factories and their trade names" according to Commerce's policy. See Sao Ta I, 44 CIT at __, 425 F. Supp. 3d at 1329.

Commerce continues to unreasonably deny SR status to Thuan Phuoc's factory names. On remand, Commerce now asserts that the factories's status as independent exporters, even if divisions of Thuan Phuoc, deprives them of the ability to benefit from Thuan Phuoc's SR status as trade names.[10] Irrespective of the legal structure of a company, Commerce takes the position that any division of a company, a separate branch, or a separate facility that acts as its own independent exporter—i.e., "is licensed to produce and export separately"—cannot be a trade name of that company. Id. at 24–27.[11] Commerce offers no explanation for this approach. Indeed, this

---

[10] Previously, Commerce focused narrowly on the instructions to the SRA, which define a "trade name" as "other names under which the company does business[,]" exclusive of "names of any other entities in the firm's 'group,' affiliated or otherwise[,]" and determined that the factories were separate companies part of Thuan Phuoc's "group" rather than trade names of Thuan Phuoc. See Final Decision Memo. at 18, 22–23.

[11] Throughout the Remand Results, Commerce criticizes Thuan Phuoc for self-bestowing "single-entity" status. See Remand Results at 14–17. According to Commerce, only Commerce, not an exporter, may make single-entity determinations. Id. at 15. Commerce, however, conflates two distinct concepts. Commerce grants

(footnote continued)

Consol. Court No. 18-00205                                                                Page 11
**PUBLIC VERSION**

position seems to be inconsistent with its policy and the instructions to the SRA and SRC.  Commerce's policy as well as the instructions to the SRA and SRC focus on whether a firm's export activities are sufficiently independent from the NME to qualify for an SR and recognize that a company may do business under one or more names.  See Policy Bulletin 05.1 at 1–2; SRA at 10 n.3; SRC at 7 n.3.  As a result, Commerce's policy, reflected in the SRA and SRC instructions, affords SR status to those trade names so long as the same name in the company's SR request appears both on the business registration certification and on commercial shipments.  See SRA at 10 n.3; SRC at 7 n.3; see also Policy Bulletin 05.1 at 4–5.  Here, however, rather than determining whether the asserted trade names "identify the exporter by its legal business name" and whether they "match the name that appears on the exporter's business license/registration documents[,]" see Policy Bulletin 05.1 at 4–5; SRA at 10 n.3; SRC at 7 n.3, Commerce relies on the commercial BRCs and commercial documentation to assert the factory names are "separate exporters" that must, themselves, apply for a separate rate.  See Remand Results at 7–12, 24–25.

---

trade names separate rate status because those are the additional names under which a firm, that successfully rebuts the presumption of governmental control, also does business.  See generally Policy Bulletin 05.1; see also SRA at 10 n.3; SRC at 7 n.3.  By contrast, Commerce will treat affiliated companies as a single entity—or a collapsed entity—for the purposes of calculating a dumping margin when producers are sufficiently intertwined with non-producers that would lead to the ability to shift sales or production as to evade AD duties.  See 19 C.F.R. § 351.401(f); see e.g., Rebar Trade Action Coal. v. United States, 43 CIT __, __, 398 F. Supp. 3d 1359, 1367–68 (2019).

Consol. Court No. 18-00205 Page 12
**PUBLIC VERSION**

Commerce, in characterizing the factories as "separate exporters," offers no definition for that term nor identifies where in the statute or regulations it bases the distinction it seeks to capture with this term. It may be that Commerce can point to both authority and rationale to support the distinction but the court will not speculate on its behalf. Commerce should state its position and explain why its approach is reasonable and how it squares with its policy as well as the SRA and SRC instructions. Cf. Policy Bulletin 05.1 at 4–5; SRA at 10 n.3; SRC at 7 n.3.

In addition, there is reason to doubt this approach represents Commerce's current practice and, if it were Commerce's current practice, that Commerce provided adequate explanation or notice of a change in its practice. See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co., 463 U.S. 29, 57 (1983) ("an agency changing its course must supply a reasoned analysis") (internal quotation and citation omitted); see also Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1377 n.5 (Fed. Cir 2007). Commerce implies that its approach is not new, explaining that it misapplied its practice when it granted SR status to the factories in prior reviews, which it subsequently corrected in this and the twelfth administrative reviews. See Remand Results at 12, 29–30.[12] Commerce points to its

---

[12] Even though Commerce refers to the grant of SR status to Seaprimexco Vietnam and its trade name as an example of the correct application of its policy in this administrative review, see Remand Results at 20–21, it is unclear why Thuan Phuoc's

(footnote continued)

statement in the issues and decision memoranda for the tenth administrative review, in which it denied SR status to Thuan Phuoc's trade names, as providing notice of its practice: "[I]f Thuan Phuoc included these names as trade names but these names are, in fact separate companies or 'branches,' they are equally ineligible for separate rate status[.]" See id. at 30 n.102, 33 n.107 (citing Certain Frozen Warmwater Shrimp from [Vietnam]: Issues and Decision Memo. for the Final Results at 80, A-552-802, (Sept. 6, 2016), available at https://enforcement.trade.gov/frn/summary/vietnam/2016-21882-1.pdf (last visited Sept. 10, 2020) ("AR10 Decision Memo.")).[13] See AR10 Decision Memo. at 80. It is unclear how Commerce's caution regarding separate companies or branches provides

---

factories would not, too, qualify for SR status, when, like Seaprimexco, Thuan Phuoc's factory names appear on BRCs and commercial documentation. Compare Thuan Phuoc SRC with Resp. from Hughes Hubbard & Reed LLP to Sec of Commerce Pertaining to Seaprimexco Supp SRC Resp. at 1, PD 143, bar code 3584546-01 (June 23, 2017) (stating that "Seaprimexco Vietnam" and "Seaprimexco" both appear on invoices).

[13] Commerce faults Thuan Phuoc for failing to file separate SRAs for its two factories and instead for submitting one SRC covering the two factory names. See Remand Results at 13–14. Commerce implies Thuan Phuoc's SRC is inappropriate because it had determined that the factories were separate from Thuan Phuoc in the tenth administrative review. Id. However, in that review, Commerce merely declined to consider the factory names as trade names because Thuan Phuoc had not provided the required commercial documentation. See AR10 Decision Memo. at 80. The SRC instructions indicate that "changes to trade names are allowed" and that "[o]nly changes to the official company name . . . require the filing of an [SRA]." See SRC at 2.

any insight to its finding, here, that the branch factories are separate exporters.[14] It may be that Commerce now views a distinctly named factory as a distinct company that is, as a consequence, its own exporter. However, that view is not discernible from Commerce's statement. Fairness demands that Commerce provide adequate notice, and it cannot be reasonably said that a statement, framed as a hypothetical, conveys a change in practice or a reason for that change. See Shikoku Chemicals Corp. v. United States, 16 CIT 382, 388, 795 F. Supp. 417, 421–22 (1992); see also Huvis Corp. v. United States, 31 CIT 1803, 1811, 525 F. Supp. 2d 1370, 1378 (2007). Instead, as a result of Commerce granting the factories SR status as trade names of Thuan Phuoc in prior reviews, Thuan Phuoc relied upon Commerce's consistent application of that practice—even if, as Commerce asserts, it was consistently misapplied. See Remand Results at 29–30, 33; see also Pls.' Br. at 21–22. Cf. Shikoku Chemicals Corp., 16 CIT at 388, 795 F. Supp. at 421–422 (concluding that "[p]rinciples of fairness prevent Commerce from changing its methodology" when it had used the methodology in prior reviews and plaintiffs relied upon that methodology). Commerce's failure to appraise interested parties of its new approach

---

[14] Although the court does not opine whether Commerce has discretion to adopt this new approach, Commerce's hypothetical statement falls short in either explaining a new approach and or providing adequate notice. Commerce may change its practice in certain circumstances so long as it explains why it is changing course and the explanation is in accordance with law and supported by substantial evidence. See, e.g., Cultivos Miramonte, S.A. v. United States, 21 CIT 1059, 1064, 980 F. Supp. 1268, 1274 (1997).

and its rationale is arbitrary and capricious. See, e.g., Huvis Corp., 31 CIT at 1814, 525 F. Supp. 2d at 1381 (holding that Commerce's change in practice was arbitrary and capricious because it failed to provide sufficient rationale).[15]

Finally, Commerce must explain how it evaluates record evidence in light of its approach. Commerce's policy, as well as the SRA and SRC instructions, requires each SR applicant to provide the name of the exporting entity, and any trade name(s) under which it may export, as identified in its BRC, and demonstrate that such entity name and/or trade name(s) match the name on documents for declared shipments to CBP. See Policy Bulleting 05.1 at 5; see also SRA at 10; SRC at 7. Here, although Commerce considers copies of the factories' BRCs, each entitled "Certificate of Activities Registration and Tax Registration of Branch" ("branch certifications"), that

---

[15] Although Commerce must give adequate notice of a change in practice, Commerce need not inform the parties of deficiencies in submissions, unless those submissions are responses to requests for information. Vietnamese Respondents are mistaken to suggest that Commerce was required under 19 U.S.C. § 1677m(d) to provide notice to Thuan Phuoc that its SRC would not also serve as the SRA for its factories and, further, to consider information on the record to nonetheless determine whether the factories were entitled to SR status pursuant to 19 U.S.C. § 1677m(e). See Pls.' Br. at 26–32. These arguments are unavailing. Section 1677m(d) requires Commerce to notify a respondent of a deficient "response to a request for information[,]" and section 1677m(e) requires Commerce to consider information necessary to a determination submitted by an interested party under certain circumstances. 19 U.S.C. § 1677m(d)–(e). By contrast, a company submits a separate rate application voluntarily so to rebut a presumption of governmental control and avoid an NME-wide rate. See Sigma, 117 F.3d at 1405; see also Policy Bulletin 05.1. Commerce may disregard SRAs when the information submitted is unreliable or deficient, so long as that determination is based on substantial evidence. See, e.g., Fresh Garlic Producers Ass'n v. United States, 39 CIT __, __, 121 F. Supp. 3d 1313, 1328 (2015).

Thuan Phuoc included with its application, see Thuan Phuoc SRC at Ex. 1, as well as the commercial invoices on the record, Commerce examines that record evidence to establish that the factories are separate exporters and therefore not trade names of Thuan Phuoc. Commerce concludes that the factories export under their own licenses because the factory names recorded on Thuan Phuoc's BRC do not match the names indicated on the branch certifications.[16] See Remand Results at 6 n.25, 7–8.[17] Further, Commerce finds that the separate bank account numbers and Food and Drug Administration facility registration numbers on the commercial invoices

---

[16] Commerce does not respond to Vietnamese Respondents' argument, raised in their case brief, that the discrepancy may be due to a translation error, compare Remand Results at 23 (summarizing Vietnamese Respondent's argument that the Vietnamese names of the factories match) with id. at 23–30, nor consider evidence concerning the BRC and branch certifications that suggest the factories are trade names or "names under which the company does business." See SRA at 10 n.3. Specifically, each branch certification identifies Thuan Phuoc as the "[n]ame of the enterprise," lists Thuan Phuoc's business registration number [[         ]], and designates each factory as having the same address as Thuan Phuoc, which, taken together, suggest that the factories are divisions of Thuan Phuoc. See Thuan Phuoc SRC at Ex. 1. In addition, unlike Thuan Phuoc's BRC, the branch certifications do not have sections regarding registered capital, abbreviated names, or shareholders, which, similarly, signpost that the factories are not independent entities. See id. Commerce does not examine these aspects of the BRC and branch certifications.

[17] As a secondary reason why the factories are separate from Thuan Phuoc, Commerce observes the branch certifications identify distinct "heads of branch." See Remand Results at 10. However, in doing so, Commerce offers no further explanation to substantiate its conclusion. See id.

Consol. Court No. 18-00205                                                                                          Page 17
**PUBLIC VERSION**

indicate the factories are their own exporters. See Remand Results at 10.[18] Commerce's policy does not indicate that it will evaluate the invoices for any purpose beyond confirming use of trade names during the period of review.[19] See generally Policy Bulletin 05.1; SRA; SRC. Rather, by evaluating the record evidence to ascertain whether the factories are separate exporters, Commerce abandons the inquiry it had set forth in its policy and the SRA and SRC instructions. Cf. Policy Bulletin 05.1 at 2; SRA at 10; SRC at 7–8. On remand, Commerce must not only state and explain its practice as discussed but must also clarify why, based on the record, inclusive of detracting evidence, it concludes the factories are not trade names of Thuan Phuoc.

---

[18] On remand, Commerce should reconcile its treatment of Thuan Phuoc with other exporters in this administrative review. Specifically, Commerce should consider whether, as Vietnamese Respondents allege, Commerce acts arbitrarily in viewing Thuan Phuoc's separate bank account numbers as probative of separate exporter status when it found other firms' factory names to be trade names of those firms notwithstanding the use of multiple bank accounts. See Pls.' Br. at 7–8.

[19] Commerce avers that there is "no information on the record from any licensing authority" that indicate the factories comprise the same company, Thuan Phuoc, see Remand Results at 17–18, but it does not address evidence of the Vietnamese Enterprise Law that Fimex placed on the record. See Resp. from Hughes Hubbard & Reed LLP to Sec Commerce Pertaining to Fimex VN Sec A QR at Ex. A-2, PD 115–16, bar codes 3580626-01–02 (June 12, 2017). The Vietnamese Enterprise Law defines "enterprise" and "branch" as well as sets forth business registration requirements, which indicate that branches do not have a separate corporate existence. See, e.g., id. at Ex. A-2 at Arts. 4.7, 45, 46. In addition, Commerce implies that the definition of an "enterprise" under Vietnamese law may not accord with the application of U.S. antidumping laws. See Remand Results at 18. Commerce fails to explain why and how the U.S. antidumping statute's definitions are relevant and why, under either U.S. or Vietnamese law, it is reasonable to infer that the branches are separate entities from Thuan Phuoc.

Consol. Court No. 18-00205 Page 18
**PUBLIC VERSION**

## CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that Commerce's final determination with respect to the denial of separate rate status to the names "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" is remanded for further explanation or consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 14 days thereafter to file the Joint Appendix; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: September 15, 2020
New York, New York